[No. 4313.]

## ELI MAYO *v.* A. A. WOOD.

CONVEYANCE OF STREETS FOR PUBLIC USE.—A deed which conveys to the present and future owners of town lots in a city, certain streets and public squares in such city, "for the public use of the inhabitants of such city, to be applied to such public purposes as the future incorporated authorities of said city from time to time declare and determine," dedicates the land to public use, and contains a sufficient designation of the grantees to make it operative as a conveyance.

ESTOPPEL BY JUDGMENT.—If a judgment in ejectment is rendered against one who holds the demanded premises as the tenant of another, a third person, who afterwards takes possession without any privity with the tenant or his landlord, is not estopped by the judgment. .

APPEAL from the District Court, Sixth Judicial District, County of Sacramento.

John A. Sutter was the Mexican grantee of the territory where the city of Sacramento is built. On the 14th day of October, 1848, he deeded it to John A. Sutter, Jr. On the 2d day of January, 1849, the latter executed a conveyance, which contained the following clauses: "Have this day conveyed and quitclaimed, and by these presents do convey and quitclaim, unto the present and future owners of town lots and town property in Sacramento City, * * * all my right, title and interest in and to certain portions of said city, described as follows." Then follows a description of streets and public squares, and among the number, the square between B and C and Twenty-first and Twenty-second streets. Then followed the following clause: "The said several squares are hereby conveyed unto the present and future proprietors of town property in said city, for the public use of the inhabitants of said city, to be applied to such public purposes as the future incorporated authorities of said city from time to time declare and determine; to have and to hold the aforesaid premises unto the present and future owners of town property in said city, their heirs and assigns forever."

A corporation had been formed called the Union Park Association, which inclosed several blocks, including said public square, for a race track. In 1862, the Board of Supervisors of the City and County of Sacramento granted to said association the right to use the streets and alleys in the inclosure. In 1868, 1869, and 1870, Robert Allen occupied the whole property by lease from said association. In April, 1868, the plaintiff Mayo brought an action against Robert Allen and the city of Sacramento, to recover possession of said block or public square between B and C and Twenty-first and Twenty-second streets. The city was not

served with process, but Allen was, and judgment was rendered against him by default, on the 11th day of August, 1869. On the 9th day of October, 1869, Allen was removed by the sheriff under a writ of restitution, and the plaintiff was placed in possession. On the 1st day of January, 1873, A. A. Wood entered into possession of the entire race-course, under a written lease from the State Agricultural Society, and was in possession under said lease when this suit was brought, and still so remains. The State Agricultural Society claimed the right to lease the whole race-track, because they had become the purchasers of a large majority, to wit, seventy-six out of eighty shares of the stock of the Union Park Association prior to January 1, 1872. On the 9th day of July, A. D. 1855, John A. Sutter, Jr., executed a deed of bargain and sale of that date to W. S. Mesick, for all lots, pieces or parcels of land within the corporate limits of the city of Sacramento, including the demanded premises.

Mesick, on the —— day of September, 1863, conveyed all his right, title, claim and interest in and to the demanded premises to L. H. Foote.

On the 17th day of April, 1868, Foote conveyed the demanded premises to the plaintiff, Eli Mayo. Mayo brought this action to recover possession of said block or public square, on said 17th of April. The court rendered judgment for the defendant, and Mayo appealed.

*Hamilton & Dunlap*, for the Appellant.

The grant from John A. Sutter, Jr., is void. There was no grantee *in esse* at the date of the grant. It does not appear that there were any owners of town lots at the date of the grant, or that any town lots were afterward sold or conveyed to any one. But if it is operative, it is provided therein that the said squares are conveyed to the future proprietors, to be applied to such purposes as the authorities of said city may determine. The authorities granted it, or, at least, the use of it, to a private corporation, and the said city authorities have never reclaimed it. The appellant insists that neither the Union Park Association nor

the State Agricultural Society can hold, use, and have the benefit of perpetual right to occupy said premises, and plead an exemption from the effect of judgments against them or their lessees.

The judgment obtained by plaintiff against Robert Allen for the possession of the premises works an estoppel as to said Allen, and all parties in privity with him. (*Marshall* v. *Shafter*, 32 Cal. 176.)

*Beatty & Denson,* for the Respondent.

We are aware of the common law doctrine that the fee of an estate can never be in abeyance. That it must at all times rest in some one *in esse*. That it is essential in every conveyance that there should be a present existing grantor and grantee.. But this doctrine has been questioned in this country, and we think that the highest court in the land, to wit, the Supreme Court of the United States, has held that in case of grants to charitable uses, religious societies, municipal corporations, etc., there may be a grant in fee to take effect in the future when the proper society, corporation or municipality is formed. (See the cases of *Pawlet* v. *Clark*, 9 Cranch, 292; *City of Cincinnati* v. *White's Lessees*, 6 Peters, 431.)

But whether the fee can or cannot pass without a grantee *in esse* at the date of the grant is wholly immaterial in this case. The grant in this case is to the present and future owners of town lots, etc., in Sacramento. Now, at the date of the grant there were present owners *in esse*. If it could not be deeded to future owners those words were simply surplusage.

We apprehend, however, that none of these technical questions arise in this case. If this instrument was not sufficient to pass the legal title from John A. Sutter, Jr., it was at least a dedication of the ground to public use and vested the whole beneficial interest in the public. That beneficial interest being vested in the public, neither Sutter, Jr., nor his vendee, could recover of the city or its tenants or licensees. In support of both propositions contained in the last paragraph (first, that the beneficial interest passed

by the deed; second, that ejectment cannot be sustained), we refer to the following cases: *City of Cincinnati* v. *White's Lessees* (6 Peters, 431); *Joseph Barclay et al.* v. *R. W. Hawks, Lessee* (6 Peters, 498).

By the Court, CROCKETT, J.:

1. The instrument executed by John A. Sutter, Jr., on the 2d day of January, 1849, dedicated the land in controversy to public use, to be applied "to such public purposes as the future incorporated authorities of said city (may) from time to time declare and determine." It purported in terms to convey whatever title he had, to "the present and future owners of town lots and town property in Sacramento City." It recognized the fact that there were such "present" owners, and that Sacramento was then known as a city, though not at that time formally incorporated as such. Aside from the question of dedication, the instrument was operative as a conveyance to vest the title in the then "present" owners of the town lots and property. This was a sufficient designation of the grantees to uphold it as a conveyance, and thereafter Sutter, Jr., had no title to this property which could pass by his deed to Mesick.

2. The defendant was not estopped by the judgment recovered by the plaintiff against Allen, from setting up an outstanding title. He did not enter under Allen, nor under the Union Park Association, whose tenant Allen was at the commencement of that action. On the contrary, he entered under the State Agricultural Society, which, so far as appears from the record, did not receive the possession from Allen or from the Union Park Association. All that appears on this point is, that having acquired a majority of the stock of the Union Park Association, the State Agricultural Society took possession of the property, and leased it to the defendant. But there is nothing to show that it took possession with the consent of the Union Park Association as a corporation, or that it was not a mere trespasser. The defendant having no privity with Allen or his lessor, the Union Park Association, was in no respect estopped by the judgment.

We deem it unnecessary to notice the other points discussed by counsel.

Order and judgment affirmed.    Remittitur forthwith.