[No. 15593.   Department One.—May 25, 1895.]

CALIFORNIA ACADEMY OF SCIENCES, APPELLANT, *v.* CITY AND COUNTY OF SAN FRANCISCO ET AL., RESPONDENTS.

PUEBLO LANDS OF SAN FRANCISCO—TRUST—RESERVATION—ORDER No. 800—POWER OF SUPERVISORS—DESIGNATION OF LANDS FOR PUBLIC USE.—The pueblo lands of San Francisco are held in trust for the use and benefit of the inhabitants of the city, except such parcels thereof as were reserved and set apart by ordinance for public uses; and order No. 800, which was validated by the legislature, conferred upon the supervisors power to set apart and to delineate upon the official map lots or portions of land for public uses only, and the act of the legislature in validating that ordinance was only a letter of authority to the supervisors to make a selection and designation of lots for public uses according to its terms, and is not to be construed as a ratification of any act already performed by them, but any lots or portions of land selected and designated by them for a public purpose are limited to and can be claimed or kept only for such public purpose, and any selection or designation upon the map by the supervisors for any other purpose is an act without authority, and can confer no right to the land so designated.

ID.—INVALID GRANT TO ACADEMY OF SCIENCES—PRIVATE CORPORATION.—The board of supervisors of the city and county of San Francisco had no power under order No. 800, as ratified by the legislature, to set apart any lots or portion of land designated for the use of the Academy of Sciences, which is a private corporation, with limited membership, and can in no respect be regarded as invested with the care of the public, or subject to public control; and the fact that the public derives a benefit from its labors and its contributions to science does not render such organization a public body or its object a public purpose.

APPEAL from a judgment of the Superior court of the City and County of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*S. W. Holladay,* for Appellant.

The city in 1868, when order No. 800 was ratified, had power, under section 7 of the Consolidation Act, to dispose of real property for the common benefit. (*Adams* v. *Memphis etc. R. R. Co.,* 2 Cold. 645.) A grant for the use of the Academy of Sciences was for a public use, and in law a charity for the advancement of learning. (*American Academy* v. *Harvard College,* 12 Gray, 582; *Chapin* v. *School District,* 35 N. H. 445; *Jackson* v. *Phillips,* 14 Allen, 539; *Price* v. *Maxwell,* 28 Pa. St. 34; *Taylor* v. *Trustees etc.,* 34 N. J. Eq. 101; Am. & Eng. Ency. of Law, " Charities," p. 129, note 7; *Russell* v. *Allen,* 107 U. S. 163; *Whicker* v. *Hume,* 7 H. L. Cas. 128, 139, 155; *Vidal* v. *Girard,* 2 How. 192.) Public uses may be exercised through private corporations. (Code Civ. Proc., sec. 1238, subds. 4–7; *Sharpless* v. *Mayor of Philadelphia,* 21 Pa. St. 169; 59 Am. Dec. 759; *Robinson* v. *Bidwell,* 22 Cal. 394, 395; *Contra Costa R. R. Co.* v. *Moss,* 23 Cal. 326; *Napa Valley R. R.* v. *Napa County,* 30 Cal. 436; *Stockton etc. R. R. Co.* v. *City of Stockton,* 41 Cal. 169; *State* v. *Town of Hampton,* 2 N. H. 25; *Beekman* v. *Saratoga R. R.,* 3 Paige, 59; 22 Am. Dec. 679; *Gilmer* v. *Lime Point,* 18 Cal. 252; *Perin* v. *Carey,* 24 How. 501.) It is for the legislature to determine what is a public use, and how the municipal trust should be performed. (*Polack* v. *Trustees, etc.,* 48 Cal. 490; *San Francisco* v. *Canavan,* 42 Cal. 557.)

*H. T. Creswell,* city and county attorney, for Respondents.

The pueblo lands were held in trust only for the inhabitants of the city and for municipal purposes, and such use cannot include a grant to the Academy of Sciences, which is a private corporation. (*Hart* v. *Burnett,* 15 Cal. 530; *San Francisco* v. *Canavan,* 42 Cal. 541; *Townsend* v. *Greeley,* 5 Wall. 326.)

HARRISON, J.—Ejectment.

The land claimed by the plaintiff is embraced within the pueblo claim of the city of San Francisco, which was confirmed to the city by the decree of the circuit court, May 18, 1865. It is situate west of the charter line of 1851, and is within that portion of the city and county commonly known as outside lands, and is a portion of the land referred to in the act of Congress of March 8, 1866. (14 U. S. Stats. 4.) After the passage of this act the supervisors passed an ordinance known as "order No. 800," which was ratified by the legislature by an act approved March 27, 1868. (Stats. 1868, p. 379.) By the first section of this ordinance the board of supervisors were authorized and directed to devise and adopt a plan for the subdivision of these outside lands into blocks and lots, "and to select and set apart for public uses such lots and portions of said land as said board may deem necessary." The second section provided that after the adoption of the plan the board of supervisors should cause a map of the lands to be made according to this plan, "and upon such map shall be designated the lots and portions of land set apart for public uses, and the particular use for which each lot or portion of land shall have been set apart." Provision was also made for hearing applications for changes in the plan, and making alterations therein, and delineating them upon the map, and that, when such alterations should have been delineated, the map should become the official map, and the portions of land thereon designated for public purposes should be deemed to have been dedicated as such. By virtue of the provisions of this ordinance the committee on outside lands prepared a map, which they presented to the board of supervisors, and accompanied the same with a report showing the various selections of lots and portions of land set apart for public uses, and designating one of these selections to be "for the use of the Academy of Sciences." Before the final adoption of the map the lot involved in this action was, upon the recommendation

of the committee on outside lands, substituted for the one that had been originally reported by them, and was delineated thereon, and the map was by ordinance declared to be the official map, and all the lots and lands designated on said map were declared to be set apart and dedicated to the uses for which they had been designated on the map.    Upon this map the words "Academy of Sciences" were placed within the space corresponding to the description of the lot involved herein.    Other acts were performed by the supervisors indicative of an intention to set apart the lot in question for public uses, and upon other official maps subsequently made the lot is marked "Academy of Sciences." By virtue of these acts of the city and its officers the plaintiff claims the right to the possession of the lot. The plaintiff was never in the occupancy of the lot; but in December, 1887, a resolution was passed by its trustees and entered in its records, " accepting the dedication " of the lot, and a copy of this resolution was presented to the board of supervisors and filed with its clerk.    In February, 1888, the supervisors passed a resolution granting the use of the lot to the board of education, and thereafter this latter body erected a schoolhouse thereon, and is still occupying the lot.

The plaintiff was incorporated June 27, 1853, under the laws of this state for the incorporation of scientific associations, by the corporate name of " California Academy of Natural Sciences," and on February 24, 1871, was reincorporated under the same laws by the name of " California Academy of Sciences."    There is no corporation, association, or institution in this state by the name of "Academy of Sciences " other than the plaintiff herein.    The record does not disclose the method by which membership is had in the plaintiff, but it is stated that it has no capital stock, and that during its whole existence it has derived its support from the monthly dues of its members, and from sums paid for life memberships in the society, and from voluntary contributions.    It also

appears that it is managed by a board of trustees, and that the services of its officers are rendered without compensation.

The court below rendered judgment in favor of the defendants, upon the ground that the plaintiff is a private corporation, and that the board of supervisors had no power to set apart the land in question for any other than public purposes. From this judgment and an order denying a new trial the plaintiff has appealed.

At the time of the adoption of the official map under order No. 800, and the placing thereon upon the lot in question the words "Academy of Sciences," the corporate name of the plaintiff was "California Academy of Natural Sciences," and there is nothing in the record to indicate that the board of supervisors intended by this delineation to designate the plaintiff, or whether it was its intention to set apart the lot for an "Academy of Sciences" that might thereafter be created or organized for public purposes. It is unnecessary, however, to determine what was the intention of the board of supervisors, as, unless that body had the power to set apart the land for the plaintiff, none of its acts could effect that purpose.

The decree of the circuit court confirming the pueblo claim of the city declared that the confirmation was in trust for the benefit of the lot-holders under grants from the pueblo, town, or city of San Francisco, or other competent authority, and as to any residue, "in trust for the use and benefit of the inhabitants of the city." By an act of July 1, 1864 (13 U. S. Stats., 333), Congress had released to the city all claim to land within its corporate limits, as defined in the charter of 1851, and on March 8, 1866, the United States (14 U. S. Stats. p. 4) confirmed the claim of the city, and granted to it its interest in said lands, upon the trust that it should be disposed of and conveyed by the city to parties in *bona fide*, actual possession thereof on the passage of the act, "except such parcels thereof as may be reserved and set

apart by ordinance of said city for public uses." Order No. 800, which was validated by the legislature, conferred upon the supervisors the power to set apart and delineate upon the official map lots or portions of land for public uses only, and only the lots which should be designated on the map for public uses are dedicated as such. It must be observed that, at the time this ordinance was validated by the legislature, the selection and designation of lots upon the map had not been made, and the act of the legislature in validating the ordinance is only a letter of authority to the supervisors to make the selection and designation according to its terms; and is not to be construed as a ratification or adoption of an act already performed by them. As, therefore, there was no authority in the board of supervisors to select or designate upon the map of the lands any lot or portion of land for any other than a public purpose, it follows that the lots or portions of land so selected and designated are limited to a public purpose, and can be claimed or kept only for such public purpose. Any selection or designation upon the map by the supervisors for any other than a public purpose would be an act without authority, and could confer no right in the land so designated.

The plaintiff herein is a private corporation, with limited membership, and can in no respect be regarded as invested with the care of the public, or subject to public control. The laws under which it is incorporated clearly indicate that it is essentially private, and has none of the characteristics of a public corporation. It is undoubtedly the fact that the public derives a benefit from its labors and its contributions to science, but this is merely an incidental result of its organization and existence, and it is not the essential object for which it was incorporated. The public derives similar benefit from the organization and labors of any association for scientific or sociological investigation, whether incorporated or not; but this fact does not render such or-

ganization a public body, or its object a public purpose, within the meaning of the ordinance and statutes referred to.

The judgment and order are affirmed.

GAROUTTE, J., and VAN FLEET, J., concurred.

Hearing in Bank denied.