[S. F. No. 1701.    Department Two.—December 28, 1900.]

LA SOCIETA ITALIANA DI MUTUA BENEFICIENZA, Appellant, v. CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

CITY CEMETERY—PUBLIC USE—PRIVATE GRANT UNLAWFUL.—The city of San Francisco held its cemetery lands in trust for public uses as a cemetery, and could not lawfully grant any part thereof to a private individual or corporation.

ID.—BURIAL BY BENEVOLENT CORPORATION.—The fact that the benevolent corporation plaintiff, to whom a portion of the city ceme-

tery was assumed to be granted by the supervisors, was accustomed to bury some of its members therein at its own expense, cannot affect the question of the invalidity of the grant.

Id.—Ordinance Prohibiting Further Interment—Code Provision—Permit by Health Officer.—An ordinance forbidding further interment in the city cemetery is not in conflict with section 3035 of the Political Code making it the duty of the health officer to obtain a certificate of the cause of death, and upon receiving it, to issue a permit for interment. Such permit cannot authorize interment in a place lawfully prohibited.

Id.—Unlawful Contract With Supervisors—City not Bound.—The city cannot be bound by the unauthorized acts of its agents; and the plaintiff, in making a contract with the supervisors for the erection of walls or fences and other improvements on cemetery lands granted by them to the plaintiff, was bound to know that they had no power to devote the lands to any other than public uses, or to make such contract with the plaintiff.

APPEAL from a judgment of the City and County of San Francisco.   J. C. B. Hebbard, Judge.

The facts are stated in the opinion.

James A. Devoto, Devoto, Richardson & Long, and Devoto & De Martini, for Appellant.

The license, having been given to plaintiff upon a valuable consideration, and money having been expended by the plaintiff upon the faith of it, is not revocable. (*Flickinger v. Shaw*, 87 Cal. 126[1]; *Grimshaw v. Belcher*, 88 Cal. 217[2]; *Buck v. Foster*, 147 Ind. 530[3]; *Los Angeles etc. Co. v. Los Angeles*, 88 Fed. Rep. 744; *Foster v. Bear Valley Irr. Co.*, 65 Fed. Rep. 836; *Dickerson v. Colgrove*, 100 U. S. 583.)   Plaintiff has acquired rights with the approval and sanction of the supervisors which cannot be annihilated. (*Mayor of Athens v. Georgia R. R.*, 72 Ga. 800; *Atlanta v. Gate City Gas Light Co.*, 71 Ga. 106; *Thomas v. West Jersey R. R. Co.*, 101 U. S. 71; *Hovelman v. Kansas City R. R. Co.*, 79 Mo. 632.)   A municipality may be estopped by its acts. (*Sacramento County v. Southern Pac. Co.*, 127 Cal. 217; *Brown v. Atchison*, 39 Kan. 37[4]; Dillon on Municipal Corporations, sec. 444.)   The ordinance prohibiting

[1] 22 Am. St. Rep. 234.       [3] 62 Am. St. Rep. 427.
[2] 22 Am. St. Rep. 298.       [4] 7 Am. St. Rep. 515.

further interment is in conflict with the general law, and is void.   (Pol. Code, sec. 3025; Const., art. XI, sec. 11.)

Franklin K. Lane, City Attorney, W. I. Brobeck, and Garrett W. McEnerney, for Respondents.

The city could not make any valid grant of any property held by it in trust for public uses.   (*San Francisco v. Itsell,* 80 Cal. 58; *Hoadley v. San Francisco,* 50 Cal. 275; *Sawyer v. San Francisco,* 50 Cal. 375; *Hoadley v. San Francisco,* 70 Cal. 324; *Hoadley v. San Francisco,* 124 U. S. 646; *Home etc. of Inebriates v. San Francisco,* 119 Cal. 534; *California Academy of Sciences v. San Francisco,* 107 Cal. 334, 339.)

HAYNES, C.—Defendants' demurrer to plaintiff's complaint was sustained, and judgment thereon entered against the plaintiff, who appeals from said judgment.   The other defendants are the mayor, the board of supervisors, the board of health, and the individuals composing said boards, and the health officer of the city and county of San Francisco; and the principal question involved is the validity of an ordinance of said city passed by the board of supervisors in June, 1897, and approved by the mayor, and which, with the preamble, is as follows:

"Whereas, the burial of the dead within the city cemetery is dangerous to life and detrimental to public health, therefore the people of the city and county of San Francisco do ordain as follows:

"Section 1.   Burials within the city cemetery prohibited.— It shall be unlawful for any person, association, or corporation from and after the first day of January, 1898, to bury or inter, or cause to be buried or interred, the dead body of any person in the city cemetery of the city and county of San Francisco."

The second section declared a violation of this order to be a misdemeanor, punishable by a fine of not less than one hundred dollars nor more than five hundred dollars, or by imprisonment not exceeding six months, or by both fine and imprisonment.   The time when this ordinance should take effect was afterward extended to March 1, 1898.

Briefly stated, the complaint alleges the following facts: That·

plaintiff is an incorporated benevolent society, having for one of its purposes the maintenance and care of the sick who are members of the corporation; that since its incorporation in the year 1867 a large number of deaths have occurred among its members; that of the members so dying a number averaging about twenty-five per year were poor, and their bodies, by reason of their membership or for other reasons, are cared for and buried by the plaintiff at its expense; that in January, 1879, the said city and county, being the owner of a tract of land designated on the official map of said city and county as the "Golden Gate Cemetery," adopted a resolution No. 13,244 (new series), and thereby granted to the plaintiff blocks numbered 9 to 21, inclusive—part of said Golden Gate Cemetery—for burial purposes, "on condition that plaintiff should construct and maintain such walls or fences and make such improvements as might thereafter be designated or required by said board of supervisors on and around the lots so granted as aforesaid"; that plaintiff accepted the said grant and said conditions; that by a subsequent resolution (No. 13,479), adopted in 1879, plaintiff was required to enter into an agreement whereby it undertook, in the sum of five hundred dollars, with two good and sufficient sureties, to perform all the requirements of said first-named resolution, and particularly to construct and maintain said walls or fences, and to make such improvements as might be required by said board, and also that plaintiff should pay its pro rata assessment for the improvement of the avenues of said Golden Gate Cemetery; that plaintiff has performed all of said conditions, and has used said land for said burial purposes, and has expended a large amount of money in making said improvements, aggregating not less than two thousand dollars; and that the Golden Gate Cemetery is now known as the "City Cemetery," and is so designated in said ordinance. The prayer is for the annulment of said ordinance, that plaintiff's title be quieted, for an injunction, and other relief.

Appellant contends: 1. That said resolution of the board of supervisors was a grant of said lands to the plaintiff; 2. That even though it be not a grant the plaintiff is entitled to the relief demanded; and 3. That said ordinance is in conflict with general laws. Neither of these contentions can be sustained.

The tract of land containing two hundred acres and designated originally as the "Golden Gate Cemetery," and afterward known as the "City Cemetery," included the lands here in controversy, and the whole tract of two hundred acres is a portion of the land referred to in the act of Congress of March 8, 1866. (14 U. S. Stats. 4.) After the passage of this act the supervisors passed an ordinance known as order 800, which was ratified by the legislature by an act approved March 27, 1868. (Stats. 1868, p. 379.) By the first section of this ordinance the board of supervisors were authorized and directed to devise and adopt a plan for the subdivision of the outside lands referred to in said act of Congress into blocks and lots, "and to select and set apart for public uses such lots and portions of said land as said board may deem necessary." The second section of said ordinance provided that after the adoption of the plan the board of supervisors should cause a map of the lands to be made according to this plan, "and upon said map shall be designated the lots and portions of land set apart for public uses, and the particular use for which each lot or portion of land shall have been set apart." Section 6 of said ordinance further provided that "the tract or portion of land set apart and designated thereon as a cemetery, and lots for a hospital, . . . . shall be deemed absolutely dedicated as such."

The alleged grant to the plaintiff was made by ordinance in 1879, and though not set out in full in the complaint it may be conceded that it was sufficient in form to vest in the plaintiff the rights and privileges contended for; but the board of supervisors had no power to make the grant.

That the city held said cemetery lands in trust for public uses as a cemetery cannot be questioned, and it is equally clear that the plaintiff is a private corporation, and that a grant to its use is not a grant to a public use, even though the corporation uses it only for burial purposes. The fact that some of its members are buried at the expense of the corporation, who, if they were not members of the corporation, would be buried at the expense of the city, does not affect the question. The grant and use, each, were for and to the corporation. The cases of *California Academy of Sciences v. San Francisco*, 107 Cal. 334, and *Home for the Care of the Inebriate v. San Francisco*,

119 Cal. 534, are in point and conclusive of this case, unless appellant's second or third points make those cases inapplicable.

Appellant's second contention is based upon the fact that a contract was entered into and a bond executed to secure the erection of walls or fences and other improvements on the lands described in the complaint.

It is sufficient to say in reply that the board of supervisors had no power to devote the land to any other than public uses, and the plaintiff was bound to know that they had no such power. The city and county cannot be bound by the unauthorized acts of its agents. In *Hoadley v. San Francisco*, 50 Cal. 275, it was said of the property there in controversy: "It was granted to the city for public use, and it is held for that purpose only. It cannot be conveyed to private persons, and is effectually withdrawn from commerce; and the city having no authority to convey the title, private persons are virtually precluded from acquiring it"; and private corporations are in the same category. The case above cited was approved in *Sawyer v. San Francisco*, 50 Cal. 375, and in *Hoadley v. San Francisco*, 70 Cal. 324, which was affirmed by the supreme court of the United States upon writ of error, in 124 U. S. 646. (See, also, *San Francisco v. Itsell*, 80 Cal. 59.)

Lastly, it is said that this ordinance is in conflict with general laws. It is alleged in the complaint that the board of health of said city, in December, 1897, passed an order providing that in compliance with said ordinance no burials should be permitted in said City Cemetery from and after the time specified by the board of supervisors.

Appellant's contention is not very clear, but, as we understand counsel, that under section 3035 of the Political Code the health officer must obtain a certificate of the cause of death, and that upon receiving it it is his duty to issue a permit for the interment.

Undoubtedly, that is true; but it does not follow that the health officer may grant a permit for interment in a place prohibited by the lawful authority of the city.

The judgment appealed from should be affirmed.

Smith, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is affirmed.

McFarland, J., Henshaw, J., Temple, J.

Hearing in Bank denied.