[Sac. No. 3767. In Bank.—May 29, 1925.]

## H. J. FUTTERER, Appellant, v. CITY OF SACRAMENTO (a Municipal Corporation) et al., Respondents.

[1] DEEDS—PUBLIC PURPOSES—DEDICATION—CONSTRUCTION.—Where an owner of land executed a deed by which he conveyed and quit-claimed "unto the present & future owners of Town lots and town property in Sacramento City in the territory of California all my right title & intrest in and to certain portions of said city de-scribed as follows and under the conditions following," the descrip-tion covering all the streets and alleys in said city with certain reservations and also certain blocks or squares designated, and the deed provided that the several squares were conveyed "for the public use of the inhabitants of said city to be applyed to such public purposes as the future incoperated authoritys of said city from time to time declare and determin. To have and to hold the aforesaid premises unto the present and future owners of town property in said city their heirs & assigns forever," the deed suffi-ciently identified the grantees, and it was the intent of the grantor that the public purposes to which the property was to be applied were to be broadly and not narrowly defined, and such as the future authorities should determine.

[2] ID.—LIMITATION OF USES.—Said deed was not one wherein the grantor circumscribed his grant with such limitations as that the properties conveyed should be used for a public park and public playground or a zoological garden, or for any of the various pur-poses of public education, nor was it such a grant as the officials of the city exercising their functions at any particular period in its history might have limited by the adaptation of the property to a particular or a limited use.

[3] ID.—USE OF PROPERTY FOR MUNICIPAL AUDITORIUM.—The use of the property conveyed by such deed for the erection thereon of a building or buildings to be devoted to public assembly and con-vention purposes and to be designated and used as a "municipal auditorium," while probably not within the conscious mind of the grantor at the time of his grant, is fully within the scope of the powers which the city was to exercise through its officials from time to time.

[4] ID.—RESTRICTION OF USE—USE FOR PRIVATE PURPOSES.—The city has the power to provide for the occasional use of a municipal

2. Erection of buildings in public parks and squares, notes, 11 Ann. Cas. 468; 21 Ann. Cas. 141; Ann. Cas. 1918E, 489. See, also, 20 R. C. L. 653; 20 Cal Jur. 464-467.

auditorium on said property, when not being used for public assemblages, by private persons for such uses as the giving of concerts, exhibitions, plays, or performances for which admission fees are to be charged as the price or condition of admission thereto and to organizations or associations whose members only will be admitted.

[5] ID.—STATUS OF OWNERS OF LOTS.—While the predecessor of the owner of a lot in said city, in common with all other owners or proprietors of lots, were given by said deed a sufficiently definite status as grantees therein to render the same valid, they were granted no rights in the property or in the uses or usufruct thereof other than those which were to be exercised by the general public under the trusts for such public uses as the future authorities should determine.

---

(1) 18 **C. J.**, p. 118, n. 26, p. 174, n. 21.  (2) 18 **C. J.**, p. 118, n. 26.  (3) 18 **C. J.**, p. 118, n. 26.  (4) 18 **C. J.**, p. 129, n. 19. (5) 18 **C. J.**, p. 118, n. 26, p. 174, n. 21.

APPEAL from a judgment of the Superior Court of Sacramento County.  Malcolm C. Glenn, Judge.  Affirmed.

The facts are stated in the opinion of the court.

Chas. A. Bliss for Appellant.

R. L. Shinn for Respondents.

RICHARDS, J.—This appeal is from a judgment of the superior court in and for the county of Sacramento in an action brought by the plaintiff, who asserts himself to be a citizen of the United States and a resident and taxpayer of the city of Sacramento, for a declaratory judgment declaring the rights of the plaintiff and all other residents, citizens, and taxpayers of said city, with respect to a certain block of land lying between 15th and 16th and I and J Streets therein and upon which block of land the City of Sacramento through its proper officials has declared its intention of erecting a public assembly and convention hall, otherwise designated as a "municipal auditorium"; and for the purpose of which erection the people of the said city have heretofore and at a duly held election voted bonds in the sum of $750,000.  The averments of the plaintiff's complaint were in the main admitted in the answer and as to certain

disputed matters in the pleadings the findings of the trial court were in accord with the averments of the defendants' said answer; and as to these the plaintiff makes no assault upon the findings on this appeal. The findings of fact of the trial court may therefore be taken as setting forth the conceded facts of the case. These findings briefly summarized show that on or about the second day of January, 1849, John A. Sutter, Jr., who was then the owner of the lands in question and in fact of most, if not all, of the property upon which the then newly founded City of Sacramento was rising, executed a deed by the terms of which he conveyed and quitclaimed "unto the present & future owners of Town lots and town property in Sacramento City in the territory of California all my right title & intrest in and to certain portions of said city described as follows and under the conditions following." Then follows the description covering all the streets and alleys in said city with certain reservations, and also certain blocks or squares in said city designated therein including the lands involved in this litigation. The deed proceeds as follows: "The said several squares are hereby conveyed unto the present & future propriators of town property in said city for the public use of the inhabitance of said city to be applyed to such public purposes as the future incoperated authoritys of said city from time to time declare and deturmin. To have and to hold the aforesaid premises unto the present and future owners of town property in said city their heirs & assigns forever." The findings further show that the said conveyance and the trusts embodied therein were accepted by the City of Sacramento and that ever since the incorporation of said city the said land has been under the control of and its use administered under the authority of the governing body of said city pursuant to the provisions of said deed; that from and after the twenty-sixth day of August, 1872, the said lands were devoted to public school purposes under a certain ordinance of said city which was repealed in 1923, and that on June 30, 1924, the board of education abandoned said premises and ceased to use the same for public school purposes. The findings then proceed to adopt the averments of the complaint as to the holding of said bond election, and as to the result thereof which show that at the time of said election and in the

favorable vote for said bonds the place for the erection of the building for which the funds to be derived from the sale of said bonds were to be devoted was not designated; but that thereafter and on the twenty-first day of May, 1923, the said city by resolution duly adopted by its city council designated the location of said assembly and convention hall and auditorium to be that of the lands here in question. The court proceeds to find:

"That it is the intention of the City of Sacramento, when said public assembly and convention hall, otherwise designated as the 'Municipal Auditorium,' is finished, to rent the same from time to time, at times when the said auditorium is not being used for public assemblages or conventions, for compensation to private persons who will give concerts, exhibitions, plays and performances therein and charge an admission fee thereto, and exclude therefrom all persons who may not pay for such admission.

"That in addition to renting the said auditorium to private persons, as aforesaid, the City of Sacramento intends to rent the same to associations and societies of limited membership, at times when said auditorium is not being used for public assemblages or conventions, which associations will use the same and give performances therein and exclude therefrom all persons who are not members of such societies or associations.

"That the revenue derived from said renting by the City of Sacramento will be placed in the city treasury of the City of Sacramento to be used for the public purposes prescribed by law.

"That unless the defendant City of Sacramento has the right to erect said auditorium on said site, and use the same in accordance with its intention as above set out, it will not construct said auditorium on said site, but will locate the same elsewhere."

As conclusions of law from the foregoing findings of fact the court finds:

"That the legal title to the block or square situated in said City of Sacramento, State of California, and being the block or square between 15th and 16th and 'I' and 'J' Streets is vested in plaintiff, and others, by virtue of their ownership of lots in said City of Sacramento, subject however, to the trust that said square should be for the public

use of the inhabitants of said city, and to be applied to such public purposes as the governing authorities of said city shall from time to time determine.

"That the construction and maintenance of a public assembly and convention hall is a public use and purpose and is within the public purposes referred to in the said deed by John A. Sutter Jr., and that the defendants have the right to utilize the said block or square for said purpose, with full power to control and operate the said public assembly and convention hall when constructed, including the right to hire or rent the same at times when said public assembly and convention hall is not being used for public assemblages or conventions, to private persons, associations or societies, for concerts, exhibitions, plays, performances and like activities, admission to which will be restricted to persons paying a fee, or being members of such association or society, and from which all persons except those who pay the admission fee, or are members of such society or association may be excluded."

The judgment of the court was in accord with the foregoing conclusions of law and from such judgment the plaintiff prosecutes this appeal.

The appellant shows and the respondents admit that the above-mentioned deed of John A. Sutter, Jr., was before this court for interpretation in the case of *Mayo* v. *Wood,* 50 Cal. 171, in which case the plaintiff therein claimed title to a certain other of the blocks or squares of land described in said original deed of Sutter under a subsequent deed from Sutter, and under such claim of title and also under the claim that said original deed of Sutter was void for the reason that there was no sufficient designated grantee therein, sued a defendant in possession of said block or square of land in ejectment. The court said:

"1. The instrument executed by John A. Sutter, Jr., on the 2d day of January, 1849, dedicated the land in controversy to public use, to be applied 'to such public purposes as the future incorporated authorities of said city (may) from time to time declare and determine. (It purported in terms to convey whatever title he had, to 'the present and future owners of town lots and town property in Sacramento City.' It recognized the fact that there were such 'present' owners, and that Sacramento was then known

as a city, though not at that time formally incorporated as such. Aside from the question of dedication, the instrument was operative as a conveyance to vest the title in the then 'present' owners of the town lots and property. This was a sufficient designation of the grantees to uphold it as a conveyance, and thereafter Sutter, Jr., had no title to this property which could pass by his deed to Mesick."

[1] While this court has thus declared the said original deed of John A. Sutter, Jr., to be valid as containing sufficiently identified grantees in the then existing owners of "town lots and town property" in the then actual though unincorporated City of Sacramento, it has not heretofore been called upon to define the rights of such "present" grantees or of their successors in the future ownership of property in that city in respect to the property in question here. Nor has it been heretofore required to interpret said deed as to the nature, extent, or limitations upon the trust for public purposes which was thereby created either in the grantees of said deed or in the public officials of said city upon its due incorporation as such. The deed itself does not leave room for much, if any, doubt that it was the intention of the grantor therein that the puplic purposes to which said property was to be applied were to be broadly and not narrowly defined, since they were to be such as lay not so much within the present conception or intent of the grantor or of even of his immediate grantees, but were to be such as "the *future* incorporated authorities of said city *from time to time* declare and determine." The contemporaneous history of the civil and political institutions of California which were in the first and primitive stages of formation during the years 1848 and 1849, the fact that the turbulent social conditions of our golden prime had not yet settled into those of an ordered or organized state, and that, at the date of this instrument, and, in fact for nearly a year thereafter, no constitutional or statutory authority existed for the organization of municipal corporations or for any definition of the powers or of the public purposes or uses to be ascribed to such organizations, lends support to our conclusion that it was the intent of the grantor of this instrument to commit the choice and extent of the public purposes or uses to which the lands in question were to be devoted to the public officials of a municipality which

had not as yet officially been born; and which discretion was to be exercised by such officials according to the changing conditions of the city of the future which the grantor forevisaged in his gift. [2] This is not a case wherein the grantor has circumscribed his grant with such limitations as that the properties conveyed shall be used for a public park, or public playground or zoological garden, or for any of the various purposes of public education; nor is it such a grant as the officials of the city exercising their function at any particular period in its history might have limited by the adaptation of the property to a particular or limited use. The fact, therefore, that this property was for a time devoted to school purposes has worked no derogation of the powers of the present officials of the municipality to devote it to other and more comprehensive uses. It is not seriously contended by the appellant herein that such is the case, nor is it within the appellant's insistence that the City of Sacramento may not legally devote the said property and the whole thereof to having erected thereon a building or buildings to be devoted to public assembly and convention purposes and to be designated and used as a "municipal auditorium." [3] We hold, therefore, that such purposes, while probably not within the conscious mind of the grantor at the time of his grant, are fully within the scope of the powers which the city of his vision was to exercise through its officials from time to time during the future years.

[4] It is, however, the contention of the appellant herein that, while it may be conceded or held that the City of Sacramento has power to devote said property and the structures to be erected thereon, to such uses as "a public assembly and convention hall" or as a "municipal auditorium," it has no power to place such limitations upon the entire freedom of use at all times by the general public of such property or the buildings thereon as are attempted or threatened to be imposed by the present city council of said city in the occasional use thereof when not being used for public assemblages, by private persons for such uses as the giving of concerts, exhibitions, plays, or performances for which admission fees are to be charged as the price or condition of admission thereto. The appellant urges this contention both in his capacity as a citizen and resident of Sacramento, and hence a member of its body politic, and also

in his capacity as a successor in interest of one of the original grantees of said deed by virtue of the latter's ownership of a portion of a town lot in said prospective city at the date of Sutter's said deed. [5] Dealing first with said latter claim we are of the opinion that while the predecessor of said plaintiff, in common with all the other owners or proprietors of town lots in said primitive and as yet inchoate municipality, were given by said deed a sufficiently definite status as grantees therein to render the same valid, as was held in the case of *Mayo* v. *Wood, supra,* they were granted thereby no rights in said property or in the uses or usufruct thereof other than those which were to be exercised by the general public under the trusts for such public uses as the "future incorporated authorities of said city" were "from time to time to declare and determine." The appellant has cited us to no authority which would uphold any other interpretation of this grant, and it therefore follows that the appellant must rest his contention solely upon his membership of the body politic of the City of Sacramento. His contention as thus limited then would be that the only public purposes or public uses to which the said block or square of land in said city, or the structures erected or to be erected thereon, could ever be put would be such as would permit the general public at all times and upon all occasions, when such property or the buildings thereon were being put to any use, free access thereto and to the untrammeled enjoyment of such use. We are not willing to go thus far with the appellant in this case, nor do we think that either the terms of said grant and of the trusts and uses covered thereby, or the purposed devotion of the property in question to the specific purposes declared by the public authorities of said city, require us so to do. The utilization of the structures proposed by the city council of Sacramento upon said block or square of land for a public assembly and convention hall or for a so-called municipal auditorium is unquestionably a laudable and proper public use and purpose viewed in the light of the almost universal civic and social needs and usages of modern cities. To these uses and purposes the property in question with the structures proposed to be placed upon it and the whole thereof are generally to be put upon all occasions when the same shall be required for

such uses and purposes; and it is only when such prop-
erties are not being required or not being used for such
wholly public purposes that the authorities and agents of
said municipality are to be permitted to allow private per-
sons the temporary and licensed permission to use such of
said properties as may be required for concerts, exhibitions,
plays, and performances, charging an admission fee there-
for; and is also to be permitted to allow associations and
societies of limited membership to use portions of said prem-
ises and to give performances therein to the exclusion of
those who are not members of such societies or associations.
This limited occupation and use of said premises is in either
or any case confined to such times or occasions as said prop-
erties are not being used for public assemblages or conven-
tions, while the revenues to be derived from such limited
uses are to be deposited in the city treasury and devoted to
such public purposes as are prescribed by law. We are
directed by the briefs of appellant to numerous cases hold-
ing that when property has been deeded or dedicated for
specific public purposes and uses, such as for a public park
or playground or other like uses, where in the nature of
things the general public must have equal access to the thing
granted or dedicated in order to share in the enjoyment of
its specific uses, in which cases it has been quite generally
and properly held that the subject of such uses cannot be
devoted to such other uses as would materially interfere with
such general public enjoyment. We are also cited to cases
holding that where property has been acquired or dedicated
to public use it cannot be wholly set apart to uses or pur-
poses which are not essentially public in their nature or
control. Such was the case of *California Academy of
Sciences* v. *City and County of San Francisco,* 107 Cal. 334
[40 Pac. 426], wherein it was held that pueblo lands of said
municipality held in trust for its inhabitants for municipal
purposes could not be set apart for the sole occupancy and
use of the Academy of Sciences, a private corporation, with
limited membership and the purposes of which, while in-
cidentally for the public benefit, were essentially private and
intended primarily for the benefit and enjoyment of the few.
Such was also the case of *La Societa Italiana, etc.,* v. *City
and County of San Francisco,* 131 Cal. 169 [53 L. R. A. 382,
63 Pac. 174], wherein it was held that lands of said munici-

pality held in trust for public uses as a cemetery could not be granted to a private corporation for the burial exclusively of its own members; citing as authority the former case.

We are also cited to the case of *Spires* v. *City of Los Angeles*, 150 Cal. 64. [11 Ann. Cas. 465, 87 Pac. 1026], wherein it was held that lands dedicated to use as a public park could be occupied while properly usable as a site for a library but could not be devoted in whole or part to the general administrative purposes of said city. Our attention is also directed to the case of *Egan* v. *City and County of San Francisco*, 165 Cal. 576 [Ann. Cas. 1915A, 754, 133 Pac. 294], in which it was held that the city of San Francisco could not turn over in perpetuity any portion of its public land to a private corporation for the erection of an opera house thereon. On the other hand, we are cited to the case of *Harter* v. *City of San Jose*, 141 Cal. 659 [75 Pac. 344], wherein it appeared that said city was proposing to devote a small portion of a tract of land known as Alum Rock Park, containing about four hundred acres with numerous mineral springs thereon, to a hotel to be erected by a private person under a lease for a limited period and to be operated for private gain but for the general convenience and welfare of visitors to the park and under the rules and regulations of the city authorities and in a manner consistent with the general public nature and use of said park, the city to derive a revenue from such lease and use. It was held that such proposed limited use of a portion of said public property was not beyond the powers of the city authorities. And it was further held that the discretion confided in municipal authorities in the matter of the utilization of property devoted to public uses ought not to be interfered with in the absence of a clear showing of manifest abuse. Among the authorities relied upon by the court as supporting its conclusion in that case was the case of *State* v. *Schweickardt*, 109 Mo. 496 [19 S. W. 47], wherein the city authorities of St. Louis were proposing to give possession to a lessee of certain buildings in a public park for the purpose of the sale of refreshments therein and wherein it was held by the supreme court of Missouri that such possession and use of a limited area for such purposes were not to be regarded as a diversion from the legitimate uses of the park. Passing from a review of these cases to the law as declared by text-writers and by the

courts of other jurisdictions, we find it stated in McQuillin on Municipal Corporations, page 2479, under the heading "Power to Erect Convention and Assembly Halls," that it is generally held that a municipality has power to erect an assembly hall or auditorium for public purposes and that under such power it may erect even in public parks a pavilion for public amusement or convenience; and may fit up a portion of a building intended for strictly municipal purposes as a hall for public assemblies, dramatic exhibitions, etc.; and it is also declared to be the law (page 2478) that a town which has authority to devote its public funds to the erection of a market house, which is to be the leading object in erecting the building, may devote an upper story thereof to other subordinate and incidental purposes; citing *Spaulding* v. *Lowell*, 23 Pick. (Mass.) 71; and also citing the case of *French* v. *Quincy*, 3 Allen (Mass.), 9, wherein it was held that a town may erect a building for the transaction of its public business and may make a provision in the same for its prospective wants; and if all the rooms are not used, the vacant ones may be rented for private business, and that the provision in the deed to the land on which the building stands that the same "shall not be used for any other purpose than as a place for a town house for said inhabitants" is not violated because a hall on the second floor has been used for miscellaneous purposes, and vacant rooms rented to a private business. In the case of *Wheelock* v. *Lowell*, 196 Mass. 220 [124 Am. St. Rep. 543, 12 Ann. Cas. 1109, 81 N. E. 977], where it appeared that a building proposed to be erected for the use of municipal boards and officers was also being used as a place for holding theatrical exhibitions, dances, and other amusements, the court held that such incidental use was not a diversion of the building from its public purposes; and in so holding said: "If the dominating motive for the erection of the hall was a strictly public use then the expenditure for it is legal although incidentally it may be devoted occasionally to uses which are not public. If, however, the project of the defendant city is merely colorable, masking under the pretext of a public purpose a general design to enter into the private business of maintaining a public tract for gain, or devoting it to other than its public use as a gathering place for citizens generally such an attempt would be a perversion of power and a nullity and

no public funds could be appropriated for it.  The reported facts show a substantial use of Huntington Hall for political rallies, conventions, and other public meetings of citizens although from time to time it has been rented for purposes of amusement and instruction.  That the building has also been let for private uses when not required by the public needs does not affect the general legal purpose''; citing *French* v. *Quincy, supra.*  The facts of the foregoing case are strikingly similar to those of the instant case and we are satisfied that the principles of law therein enunciated have also direct and proper application to the case at bar and hence meet with our full approval.  It is not an insignificant fact having an important bearing upon this case that the state legislature in the year 1903 adopted an act entitled: ''An act authorizing cities, towns and municipal corporations to establish and maintain public assembly or convention halls and to incur indebtedness for such improvements''; and that apparently the City of Sacramento has proceeded under said act in resolving to erect its said ''Assembly and Convention Hall'' and to vote and issue bonds therefor.  Section 8 of said act provides that ''all moneys derived from the use or hire of such assembly or convention hall shall be deposited in the treasury of the municipality to the credit of said public hall fund,'' etc.  Herein is to be found the plain intendment that upon occasion such public assembly and convention hall may be let for purposes to the enjoyment of which the general public may be excluded except upon the payment of admission charges.  Looking to the findings and conclusions of the trial court we fail to perceive that the uses and purposes to which the city authorities of Sacramento intend to devote the lands and structure in question are such as are inimical to the scope and intendment of the original grant of such lands.

The judgment is affirmed.

Shenk, J., Waste, J., Seawell, J., Lennon J., and Lawlor, J., concurred.