PAK–MOR MANUFACTURING COMPANY,
Appellant,

v.

W. P. BROWN et al., Appellees.

No. 14048.

Court of Civil Appeals of Texas.
San Antonio.

Dec. 19, 1962.

Rehearings Denied Jan. 23, 1963.

**90**

Boyle, Wheeler, Gresham, Davis & Gregory, San Antonio, for appellant.

Bruce Waitz, Morris L. Collins, V. H. McFarland, San Antonio, for appellees.

MURRAY, Chief Justice.

This suit was instituted by W. P. Brown and Contractors Machinery Company, a corporation, against Pak-Mor Manufacturing Company, a corporation, to abate a nuisance resulting from the blocking by defendant of the flowing of flood waters across its land along a claimed public easement. Plaintiffs also sought to recover damages and mandatory relief. The trial was to a jury and, based upon findings favorable to plaintiffs, judgment was rendered against defendant, from which judgment Pak-Mor Manufacturing Company has prosecuted this appeal.

The land here involved is located near the intersection of U. S. Highway 281 South and Southeast Military Drive (Loop 13) in the southern part of the City of San Antonio. On the northeast corner of the above intersection is property belonging to the Gulf Oil Company, which is not directly involved herein. Just north of said property is an alleged sixty-foot easement, and adjoining this alleged easement on the north is the property belonging to W. P. Brown, which he contends has been flooded by appellant by damming up this up this alleged public easement. Just east of the Gulf property is a small tract fronting on Military Drive belonging to M. L. Rossman. Appellant's property lies east of the Rossman property and the Brown property. Appellant constructed a fence and a dike across the west end of its property, which extends across the alleged 60-foot easement, thus preventing flood waters from flowing in an easterly direction along the claimed easement, and resulting in the flooding of the property belonging to Brown.

The flood waters here involved come from the west and north, down to the west side of U. S. Highway 281, overflowing the highway, and would drain down the alleged sixty-foot easement except for the dike placed across it. There are other obstructions in the alleged easement, not here involved. Appellant contends it was conclusively established by the evidence that, due to development west and north of its property and by the building of the highway, together with certain raised traffic islands, the flood waters have been greatly increased and concentrated, and therefore there are no longer natural flood waters but man-made flood waters. Appellees contend that the water involved is not man-made flood water but natural flood water, which follows a natural drainage down to U. S. Highway 281, thence across the highway and onto the alleged easement which

is the natural drainage of the land. Attached to this opinion is a diagram which shows the lands here involved, together with the alleged easement.

Appendix I

The jury, in answer to special issues, made the following findings:

1. That the 60-foot strip of land in question provided natural drainage for the land lying to the north and west thereof, at and before the time it was dedicated to the public by T. H. Keoun and others on April 25, 1939.

2. That the 60-foot strip of land in question was utilized by the State Highway Department to provide drainage from Highway 281 after it was dedicated to the public by deed of April 25, 1939.

3. That the 60-foot strip of land was utilized by the City of San Antonio to provide drainage from Highway 281 after

the area was annexed by the City of San Antonio.

4. That the 60-foot strip of land was used as a public road after its dedication to the public on April 25, 1939.

5. That E. E. Hood did not rely upon the dedication to the public of said 60-foot strip of land when he purchased abutting property.

6. That H. L. Saunders relied upon the dedication to the public of said 60-foot strip of land when he purchased abutting property.

7. That Simeon W. Goodwin relied upon the dedication to the public of said 60-foot strip when he purchased abutting property.

8. That W. A. Chadwick, N. A. Surtus and J. S. Philips relied upon the dedication of said 60-foot strip when they purchased abutting property.

9. That the obstruction in the drainage ditch on October 11, 1961, caused appellees' property to be flooded on that date.

10. That $100.00 would fairly and reasonably compensate appellee Contractors Machinery Company for the damages caused by the flooding.

11. That the obstruction in and over the drainage ditch caused appellees' property to be flooded on November 13, 1961.

12. That $150.00 would fairly and reasonably compensate appellee Contractors Machinery Company for the damages caused by that flooding.

13. That the obstruction placed in the drainage ditch by Pak-Mor Manufacturing Company, and as it existed on October 11, 1961, created a nuisance.

14. That $500.00 would fairly and reasonably compensate Contractors Machinery Company for its annoyance, inconvenience and discomfort which resulted from that obstruction.

15. That the construction of the dike by Pak-Mor Manufacturing Company along its west property line and over the drainage ditch, as it existed on November 13, 1961, created a nuisance.

16. That $750.00 would fairly and reasonably compensate Contractors Machinery Company, for its annoyance, inconvenience and discomfort which resulted from that obstruction.

17. That Pak-Mor Manufacturing Company, through its owners, acted maliciously in obstructing the drainage ditch in question as such obstruction existed on October 11, 1961.

18. That Pak-Mor Manufacturing Company, through its owners, acted maliciously in erecting a dike along the west line of its property and across the 60-foot strip of land.

19. That Contractors Machinery Company is entitled to receive $4,500.00 as exemplary damages.

■ Appellant contends that there did not exist a sixty-foot easement across its land for drainage purposes on October 11, 1961, when it constructed the dike across the west side of its property and across the sixty-foot strip here involved. We do not agree.

The record shows and the jury found that prior to the time any improvements were made in the entire area there was a natural drainage of flood waters from the west to the east along the sixty-foot strip of land in dispute and parts of appellant's land. The record further shows G. W. Ware and R. W. Moore are the common source of title to all of the land here involved. T. H. Keoun, independent executor of the G. W. Ware Estate and manager of what he refers to as the Ware-Moore Estates, was, through his agent, Thurman Barrett, engaged in developing these and adjacent lands in the year 1939. By deed dated April 25, 1939, T. H. Keoun et al., deeded W. P. Brown's land,

together with another parcel, to W. A. Chadwick et al., and in the deed dedicated the sixty-foot strip to the public by the following language, to-wit:

"* * * This deed further dedicates *to the use of the public a strip 60 feet more or less wide* and adjoining the above described property on the South, and running East approximately *500 feet to the intersection of a street now graded on the ground,* said street running North and South from Military Drive, to the South line of the 60 foot strip more or less hereby dedicated. The *street* referred to as running *North and South* from Military Drive *is hereby also dedicated to the public."* (Emphasis ours.)

At this time the area involved lay outside of the corporate limits of the City of San Antonio.

On or about December 1, 1949, some ten years after the above dedication had been made, appellant, Pak-Mor Manufacturing Company, acquired its first tract of land in this area, i. e., the parcel fronting on Loop 13, and designated as Parcel #5. It thereafter acquired Parcels Nos. 2 and 3, at a time when each of them had been worked out and abandoned as gravel pits. Surface water from Highway 281 ran down a ditch on the alleged 60-foot easement into the excavated area. In 1961, appellant acquired soil from the San Antonio River Authority and filled in such abandoned gravel pits, not only to the original level of the land but above that level, and then proceeded to pave much of the same. Appellant then constructed a dike along its west property line, between appellees' land and its land, and on across the alleged 60-foot easement, and along the boundary between appellant's land and the Rossman tract. These obstructions of the natural flow of the flood water is the alleged nuisance that appellees seek to abate. Appellant also constructed a chain mesh fence just west of this dike.

We feel that the language used in the deed dated April 25, 1939, from T. H. Keoun et al., to W. A. Chadwick et al., is a clear dedication of the sixty-foot strip to the public, at least for drainage and street purposes. The fact that a new street is mentioned in the deed in connection with the description of the land conveyed, and that thereafter the easement was called a street, does not have the effect of making the dedication one for street purposes only. The record shows that the State of Texas accepted this dedication of the 60-foot strip, by thereafter using it for drainage of the flood waters from State Highway 281, and for other purposes, and after the area was annexed to the City of San Antonio the City used it for drainage and other purposes. We thus conclude that the dedication was complete in every respect, and was at least for drainage and street purposes. City of Tyler v. Smith County, 151 Tex. 80, 246 S.W.2d 601; 26 C.J.S. Dedication § 65, p. 559.

Whether a dedicated use is restricted or unrestricted, is determined by the intention of the dedicator or dedicators at the time the dedication was made. Where the dedication is made by a deed, the intention of the dedicator should, if possible, be determined from the four corners of the deed, which is a question of law. We feel that the intention of the dedicators in this instance is plainly shown by the deed. The 60-foot strip is referred to as a new road in the first part of the deed, but when the dedicators arrive at the part of the deed in which the dedication is made it is only referred to as a strip of land sixty feet wide and about 500 feet long. Apparently dedicators were careful not to say that the dedication was made only for use as a street; they simply said, is "dedicated to the public." This is in contrast to their language in dedicating the sixty-foot strip running north and south from Loop 13, which is described as a street. It seems to us that the dedication of the sixty-foot strip south of what is now the Brown land, was intended for drainage and street purposes. We find no ambiguity in the deed as to the intention of the dedicators, but if there was any such ambiguity, then and in that event the intent

should be determined from all the facts and circumstances surrounding the execution of the deed, which is a question of fact. The Question was not submitted to the jury, and appellant did not so request, therefore it must be presumed to have been found by the court in such a manner as to support the judgment rendered. The evidence would support such an implied finding by the court, if in fact the court did not expressly so find. There had always been trouble in this area with flood waters. Keoun and others were developing this area and selling building lots along the east side of Highway 281. When houses were built along these lots there would have to be some place for the flood waters to go through. The natural thing was for a strip to be set aside for this flood water to go through, as the drainage in this area was generally from west to east.

The dedication being without restrictions, the State and afterwards the City were free to devote the strip to drainage purposes. City of Tyler v. Smith County, supra; Bruker v. Burgess and Town Council of Borough of Carlisle, 376 Pa. 330, 102 A.2d 418; Schien v. City of Virden, 5 Ill.2d 494, 126 N.E.2d 201; Norton v. City of Gainesville, 211 Ga. 387, 86 S.E.2d 234; Flutterer v. City of Sacramento, 196 Cal. 248, 237 P. 48.

■ We feel that the trial court went too far in describing the sixty-foot strip by metes and bounds and declaring and establishing it as a public easement for all purposes. This was not a suit for declaratory judgment. It will be borne in mind that neither the State nor City is a party to this suit, it is a suit between individuals. It appears that persons not parties to this suit have encroached, either rightfully or wrongfully, upon this easement, and if appellees wanted their rights determined in this lawsuit they should have made such persons parties to this suit. This encroachment has occurred west of appellant's lands. We set aside that part of the trial court's judgment which describes the easement by metes and bounds, and declares and establishes it "as a public easement for any and all lawful public purposes for which the public or any governmental body thereof may wish to make of same." The judgment should have been confined to settling the private rights of the parties to this suit.

The record shows that after the sixty-foot strip had been dedicated by T. H. Keoun et al., in 1939, there were quitclaim deeds executed by several persons to various parts of this sixty-foot strip, including one such deed by appellee Brown to appellant, relating to a strip adjoining its land just east of the fence and dike. This quitclaim deed might have been plead and proven up as some kind of estoppel against Brown in this case, a matter we do not decide, but there being no such pleading and proof we do not deem it necessary to discuss this matter further.

Appellant contends that, inasmuch as the flood water blocked by its dike had been artificially collected, increased and discharged upon its land, it had a right to protect itself by constructing the dikes. There is evidence that the area to the north and west from the land involved had been developed by the building of houses, hard-surface streets and roads, and that thereby the amount of flood water had been increased, and that by the building of the highway these increased flood waters had been artificially concentrated and dumped upon appellant's land, and that it therefore had a right to build the dike. In support of this contention it cites the case of Willacy County v. Oakes, 239 S.W.2d 692. It is true that in that case Justice Norvell, in speaking for this Court, said:

"* * * Culverts had been placed under the highway and the county road, so that water approaching and overflowing Oakes' land was gathered into a stream or concentrated flow by said culverts. In order to prevent damage to his lands Oakes erected the dam and dykes involved, which kept the water

from the culvert under the county road particularly from flowing upon his property.

"It is well settled that lower lying lands are subject to 'a service to receive the burden of surface waters which may flow from the higher estate onto the lower, so long as the surface water from the dominant estate reaches the borders of the servient one *untouched and undirected by the hands of man*.' Miller v. Letzerich, 121 Tex. 248, 49 S.W.2d 404, 408, 85 A.L.R. 451. Had appellee attempted to interfere with the natural diffused flow of water onto his property, the dam would have undoubtedly constituted an illegal obstruction and a nuisance and subject to abatement by injunction proceedings. (Citing authorities.)

"In the present case, however, the appellant, Willacy County, directly contributed to the gathering together of the surface waters and expelling them onto appellee's lands in a concentrated form. This was done by maintaining the county road and placing a culvert under the same at the low point so as to drain the water from the area lying north of the road. The placing of the culvert under the road was undoubtedly necessary for proper highway maintenance, as well as to protect the lands north of the road from being inundated. It had the effect, however, of causing a concentrated force of water to flow onto appellee's land, which was calculated to cause more serious injury thereto than would the natural diffused flow of water over said tract. *Willacy County had secured no easement for a drainway*, and appellee was thus faced with an election between instituting a legal action or relying upon self-help. He chose the latter course and constructed the dam to keep the concentrated flow of water off his property. In so doing he was undoubtedly acting within his legal rights." (Emphasis ours.)

It will be noted, in that case the county had not secured an easement over Oakes' land for drainage. Here there was a drainway which was a public easement, and it was into this drainway that the county and city was discharging this flood water. This completely distinguishes the two cases. Here the water was being discharged into what had always been its natural drainway. The water was not collected into a culvert as in the Oakes case, it was simply allowed to flow across the highway in a wide stream, and ultimately into a public easement.

There was testimony given by people who had lived into the area to the effect that the flood water coming over the highway was no greater than it was before the area was improved. This evidence conflicted with other evidence that the flood water had been increased and concentrated. The matter was not submitted to the jury, and it may be presumed that it was resolved in favor of the judgment rendered. It was appellant's duty, if it desired to contend that the flood water was greatly increased, concentrated and discharged upon its land, to request that such an issue be submitted to the jury. This it did not do.

■ Appellant contends that the sixty-foot strip here involved was abandoned. We overrule this contention. The record shows that the strip was used for drainage purposes up until appellant obstructed it by constructing the dike. It is true that some of the land over which the flood water passed had been excavated by taking gravel therefrom. After the gravel pits were dug the water simply drained into them. This continued until appellant filled the pits.

Neither did the trial court err in requiring appellant to remove all obstruction from the drainage ditch down to its former level, which had been placed therein by appellant, east of appellant's west line.

■ Appellant, by its eighth point, contends that the trial court erred in permitting appellee Contractors Machinery Company,

a corporation, to recover damages for annoyance, inconvenience or discomfort caused by flooding of its property. We sustain this contention. This annoyance, inconvenience and discomfort was suffered by the officers and employees of the corporation, but not by the corporation. We have found no authorities in Texas directly in point, but the following have a bearing on the questions raised: Texas Traction Co. v. Hanson, Tex.Civ.App., 124 S.W. 494; Texas & N. O. Ry. Co. v. McCraw, 43 Tex. Civ.App. 247, 95 S.W. 82; Dallas Telephone Co. v. Oak Cliff Transfer & Storage Co., Tex.Civ.App., 270 S.W. 577; De Mankowski v. Ship Channel Development Co., Tex.Civ.App., 300 S.W. 118. The jury's answer of $500.00 in response to Question No. 14, and its answer of $750.00 in response to Question No. 16, cannot be permitted to stand.

■ It appears from the evidence that the fence that appellant has constructed across the sixty-foot strip does not interfere with the flow of the flood water, and it further appears that the sixty-foot strip is no longer used as a roadway; and in view of the fact that neither the City nor the State is a party to this suit, the trial court erred in requiring appellant to tear down and remove the fence which it erected approximately 249.60 feet east of the west end of said sixty-foot strip.

We have examined appellant's other points of error and, finding them without merit, they are overruled.

The judgment of the trial court will be reformed and amended so as to eliminate therefrom that part of the judgment which describes the sixty-foot easement by metes and bounds, and declares and establishes it "as a public easement for any and all lawful purposes for which the public or any governmental body thereof may wish to make of same," as well as the requirement that appellant remove the fence. The principal amount of recovery is reduced from $6,000.00 to $4,750.00. As thus reformed and amended, the judgment is affirmed.

The costs of this appeal will be taxed against appellees.

POPE and BARROW, JJ., concur in the result.